CALVIN M. NORTHRUP, Plaintiff in Error, *v.* THE PEOPLE, &c., Defendants in Error.

*Statutory right—Assignment of Courts and Judges—Place of holding Court—Adjournment of Term.*

The Court of Oyer and Terminer cannot lawfully be held at any place other than that determined upon by the Judges of the Supreme Court, communicated to the Secretary of State, and published in the State paper, in pursuance of the statute in such case made and provided.

A trial and conviction of a person of a felony at a Court held in the town of Bedford, when White Plains is the place legally designated for holding such Court, is without authority and erroneous.

The Plaintiff in error was indicted by a grand jury of the county of Westchester, in September, 1866, for administering poison to his wife.

In December following, a Court of Oyer and Terminer convened at the Court-house in White Plains, in said county, and it was ordered, and proclamation made, that the same be adjourned to the 14th day of January, 1867, at the Court-house in Bedford, in that county.

At the adjourned day, at Bedford, only ten petit jurors answered, and the Court directed that seventy-five talesmen be summoned by the sheriff for the following morning, till which time the Court adjourned.

These talesmen were accordingly summoned from the town of Bedford, and some of them sat upon the trial of the indictment.

Before the jury were called, certain objections were made by the counsel for the prisoner to the legality of the Court as thus sitting, and to the jury as thus constituted. The District Attorney having moved the indictment for trial, the Defendants' counsel showed that in the appointment by the Justices of the Second Judicial District of terms for the holding of Courts, no appointment for the holding of any Court of Oyer and Terminer to be held at Bedford, for the county of Westchester, had been made for either of the years 1866 or 1867, and it was therefore contended that the Court then and there sitting had no rightful power or authority

12

to proceed with the trial. This objection was overruled, and exception taken. Another objection was, that only ten petit jurors of those summoned having appeared, "the Court then ordered the Clerk to prepare ballots of the jurors in said town of Bedford, and ordered the sheriff to proceed and draw seventy-five jurors from the box containing the names of said jurors in said town of Bedford to act as talesmen." This objection was placed on the ground that the order should have been to summon enough jurors from the county at large, or from the bystanders, to make the whole number at least twenty-four, from which to draw a jury. This objection was also overruled, and the decision duly excepted to.

*John S. Bates*, District-Attorney, and
*Chauncey Shaffer* for the People.
*Robert Cochrane* for Prisoner.

FULLERTON, J.—By the laws of 1813 (vol. 2, p. 142, § 4), White Plains and Bedford were fixed as the places where the Courts of Common Pleas should be held in the county of Westchester, and the Circuit Courts and Courts of Oyer and Terminer were required, by a subsequent statute, to be held at the same places.

Section 17 of the Code repeals the statute last referred to, and substitutes another mode of appointment. By section 22 the Judges of the Supreme Court of each district are required to appoint the times and places for holding Courts within their respective districts. Section 24 provided, however, that the *places* appointed within the several counties for holding said Courts, should be those designated by statute for holding County or Circuit Courts. By the same statute (§ 25), it is made necessary that these appointments thus made should be transmitted to the Secretary of State, and, when received by that officer, it became his duty to cause the same to be published in the State paper, at least once a week for three successive weeks before the holding of any Court in pursuance thereof.

Under this authority the Justices of the Supreme Court of the

Second District, in November, 1865, at a meeting for that pur-
pose, designated and appointed White Plains as the place for
holding the Circuit Courts and Court of Oyer and Terminer for
Westchester county, for the years 1866 and 1867, but omitted so
to designate Bedford. It is not so stated in the case, but it is to
be presumed that these appointments were duly transmitted to the
Secretary of State, and published by him in pursuance of the
foregoing statute.

In pursuance of this appointment, a Court of Oyer and Termi-
ner convened at White Plains in December, 1866, and for some
reason not disclosed in the case was adjourned to the 14th day of
January then next following, at the Court-house in Bedford.
At such adjourned term the Plaintiff in error was tried and con-
victed of administering poison to his wife, with intent to kill;
and at a subsequent term was sentenced to the State prison for
twelve years.

Before the trial the prisoner's counsel objected to proceeding
therewith, on the ground that the adjournment from White Plains
to Bedford was unauthorized, and this presents the only impor-
tant question in this case.

The power to fix the times and places of holding Courts was
committed by statute to *all* the Judges, and not to a *single* Judge of a
judicial district. In virtue of this power, White Plain was the
only place appointed for holding the Courts of Oyer and Terminer,
for the year 1867, in the county of Westchester. It was not in the
power of a single Judge, at any time, and certainly not after all the
Judges had united in making the appointments, to appoint any
other place for holding Courts in that county. By statute, when-
ever three or more persons or officers are authorized or required
by law to perform any act, such act may be done, and such pow-
er, or authority, or duty may be exercised or performed by a ma-
jority of such persons or officers so intrusted or empowered (3
R. S., 5th ed. 869, § 29).

I cannot see why this provision does not apply to this case. It
was designed to prevent the exercise of a power delegated to a
number of persons by less than a majority of that number. This

design is frustrated, if a single Judge is permitted to adjourn a Court to a place purposely omitted to be designated by all the Judges, when they assembled and made the appointments as required by law. The policy of the law is to inspire confidence in the administration of justice. It is the right of every citizen to know the times and places for holding the Courts where his liberty or property may be put in jeopardy, and that would be a lax system of legislation indeed which would leave them the subjects of sudden and perhaps capricious changes. Our Legislature has not so left them. They have solemnly determined that all the Judges of each district shall unite in designating the places of holding Courts, and require that the appointments thus made shall be published in the State paper for three weeks before any Court shall be held in pursuance of them.

To sanction the Court at which the prisoner was convicted is to annul entirely all these provisions. I have not failed to consider the argument that Bedford was one of the places which *might* have been designated for holding the Courts in Westchester county. But the answer to this proposition is, that it was not designated and published as the statute required, and for that reason was not a place for holding a Court.

The power of a Court to adjourn to another *place*, as well as *time*, is not necessarily involved in this case; but if even that should be conceded, it would still be necessary to adjourn to a place where it would have originally been proper to hold a Court. When the places for holding the Courts were incorporated in the statute itself, it would not have been pretended that a Judge could hold a Court at any other place, under any circumstances, without legislative authority. During the prevalence of " war, pestilence, or other public calamity, or the danger thereof," Courts may be held at places different from those appointed by statute (3 R. S., 5th ed., § 75, p. 480).

In such cases, however, the change is to be made " in writing, under the hand of the Governor," and recorded in the office of the Secretary of State, and published in as many public papers as the Governor shall designate (§ 76). This shows that the Legislature

considered the appointment of the places where Courts should be held as a matter of importance, and that they did not intend they should be changed for slight causes, and not at all unless such change was duly published. (See also §§ 15 & 16 of the Code respecting adjournments of the Court of Appeals.)

I can see no difference between the force of an appointment directly by statute, and one made by Judges to whom the Legislature has delegated its power to make it, especially where, after it is made, it is required to be lodged in the archives of the State, and published in the State paper. Such an appointment ought to be as immutable as if made by the Legislature itself.

Even if the power of determining where the Courts should be held had been conferred upon a single Judge, the action of the Court, in this instance, could not be sustained. The adjournment of the Oyer and Terminer to Bedford was not, ipso facto, an appointment of that place for holding the Court, within the meaning of the statute. It still would be necessary to transmit the appointment to the State Department, and have the same published according to law. These provisions of the statute cannot all be regarded as merely directory.

In the case of the People *v.* Moneghan (1 Parker's Crim. R. 570), it was held that Courts of Sessions could not be held except in pursuance of a previous order of a county Judge, made under the authority of the laws of 1851 (ch. 444), designating the *times* when such Courts should be held, and published as therein directed.

The question arose as follows:

By the act referred to, it was provided that "Courts of Sessions, except in the city and county of New York, shall be held in the respective counties at such *times* as the County Judge of the county shall *by order designate* . . . such order shall be published in a newspaper printed in such county for four successive weeks previous to the time of holding the first term of said Court under such order."

The County Judge of Livingston county, under this authority, attempted to appoint the *times* for holding the Court of Sessions

in that county, but erroneously made the order to apply only to the *County* Courts.

A Court of Sessions was held on one of the days thus appointed, at which a person was indicted and convicted of felony. The proceedings were removed into the Supreme Court, where the indictment was quashed, on the ground that no valid appointment for holding the Court had been made.

The places at which Courts are held derive an additional importance from the terms of the statute relating to trials by jury. Chapter 210 of the laws of 1861 provides, that in addition to the box, by law now provided and kept for drawing jurors, the clerk of every county shall provide another box, in which he shall deposit the names of all persons who have been selected and returned as suitable persons to serve as jurors, and who reside *in the city or town where Courts are appointed by law to be held;* and that whenever the regular panel is insufficient, the sheriff shall draw from the box so provided the names of as many persons as shall supply any deficiency. In this case the regular panel was exhausted, and the remaining jurors were drawn from the box provided for by the law just quoted, and consequently *were taken from the town of Bedford.* To this the prisoner's counsel objected. It follows, of course, that if the Court was improperly adjourned to Bedford, the prisoner was not properly tried before the jury there empanelled, and has therefore lost the benefit of a substantial statutory right.

The cases cited (8 Cowen, 286 ; 1 Seld. 22), to show the extent of the power of adjournment by bodies invested with it, are not applicable to this case, for many reasons. These are cases where the qualified electors of a town, at their annual town meeting, after having duly organized, adjourned to another place to consummate the business before them. This was held to be proper, in the exercise of a power conferred upon them by the statute, to hold their meetings at such places as they should from time to time appoint. Here is no limitation as to place; and though the electors met at a place appointed the year previous, yet having so met and duly organized, they were, ex vi termini, *clothed with*

*their original power of adjournment,* and could then exercise it without rendering their proceedings invalid.

No one can doubt for a moment that the learned Judge who adjourned the Court to Bedford was prompted by the purest motives ; but this cannot enter into the consideration of this Court in determining as to the legality of the act.

The judgment appealed from must therefore be reversed, and a new trial ordered.

Reversed.